LAW OFFICE OF MIA D. OBCIANA
MIA D. OBCIANA                         8424
1003 Bishop Street, Suite 2700
Honolulu, Hawaii 96813
Telephone:  (808) 492-6848
Email:         mia@mdolawoffice.com

GREATER PACIFIC LAW OFFICE, LLLC
DAVID SQUERI                           8714
1003 Bishop Street, Suite 2700
Honolulu, Hawaii 96813
Telephone:  (808) 435-3035
Email:         squeri@greaterpacificlaw.com

Attorneys for Plaintiff
SAEED KHOSRAVI-BABADI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SAEED KHOSRAVI-BABADI, | ) | CIVIL NO. CV_____ |
| | ) | |
| Plaintiff, | ) | COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |
| | ) | |
| v. | ) | |
| | ) | |
| HAWAIIAN TELCOM, INC., a Hawaii corporation; HAWAIIAN TELCOM COMMUNICATIONS, INC., a Hawaii corporation; VITO NOZZA; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE GOVERNMENTAL ENTITIES 1-10, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, SAEED KHOSRAVI-BABADI, by and through his undersigned attorneys, and for his Complaint against Defendants HAWAIIAN TELCOM, INC, HAWAIIAN TELCOM COMMUNICATIONS, and VITO NOZZA (collectively "Defendants") in this matter, states and avers as follows:

## PARTIES

1.    Plaintiff SAEED KHOSRAVI-BABADI ("KHOSRAVI-BABADI" or "PLAINTIFF") is a citizen of Canada and a legal resident of the State of Hawai`i pursuant to a North American Free Trade Agreement TN Visa.

2.    Upon information and belief, Defendant HAWAIIAN TELCOM, INC ("HTI") is a domestic profit corporation, organized and operating under the laws of the State of Hawai`i. HTI is a person within the meaning of 42 U.S.C. § 2000e-(a), and an employer within the meaning of 42 U.S.C. §2000e(b).

3.    Upon information and belief, Defendant HAWAIIAN TELCOM COMMUNICATIONS ("HTC") is a domestic profit corporation, organized and operating under the laws of the State of Hawai`i. HTC is a

person within the meaning of 42 U.S.C. § 2000e-(a), and an employer within the meaning of 42 U.S.C. §2000e(b).

4. Upon information and belief, Defendant VITO NOZZA ("NOZZA") is a citizen of Canada and a legal resident of the State of Hawai`i, and was employed by HTI and/or HTC at all times pertinent to this action. NOZZA is a person within the meaning of 42 U.S.C. § 2000e-(a), and an employer within the meaning of 42 U.S.C. §2000e(b). Upon information and belief, NOZZA is legally permitted to live and work in the State of Hawaii pursuant to a Green Card.

5. At all times relevant to this Complaint, NOZZA was acting within the course and scope of his employment with HTI and/or HTC.

6. DOE Defendants are sued under fictitious names because their true names, identities and/or capacities are presently unknown to Plaintiff, except that the Doe Defendants are or were or may have been in some manner connected with one or more of the Defendants, and/or were or are the agents, principals, officers, directors, servants, employees, employers, representatives, associates, consultants, attorneys, contractors, insurers, owners assignors, assignees of one or more Defendant and are in some manner responsible to Plaintiff, and Plaintiff prays leave to certify their true

names, identities, capacities, activities, and/or responsibilities when the same are ascertained.

## JURISDICTION AND VENUE

7. All matters set forth in this Complaint arose in the State of Hawai`i, County of Honolulu.

8. This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the claims in the action within the original jurisdiction of this Court, that they form part of the same case or controversy under Article III of the United States Constitution, giving this Court supplemental jurisdiction over the claims.

9. Venue is proper pursuant to 28 U.S.C. § 1391 because this is the judicial district in which the Plaintiff resides, in which all Defendants reside, and in which the events and/or omissions giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

10. PLAINTIFF is a Canadian national who was born in Iran.

11. PLAINTIFF is a practicing Muslim.

12. PLAINTIFF earned a Bachelors of Science degree in computer programming from Phillips College in 1995.

13. PLAINTIFF was awarded a Masters of Engineering in Electrical and Computer with a specialization in computer networks from Ryerson University in 2005.

14. PLAINTIFF has the following certifications: Windows NT Core Technology (1997); Intel Product Integrator (1998, 1999); Cisco Certified Network Associate (2000); Cisco Certified Network Professional (2001); Juniper Networks Certified Internet Associate (2007); Juniper Networks Certified Internet Specialist (2009); Cisco Certified Internetwork Expert, Service Provider Track (2009); Cisco Certified Design Professional (2014); and Implementing and Configuring Cisco Identity Services Engine (2015).

15. On or about August 2012, PLAINTIFF was hired as a Solutions Engineer by HTC and/or HTI.

16. At the time of his employment, PLAINTIFF was CISCO Certified Internetwork Expert and specialized in Multiprotocol Label Switching ("MPLS") networks.

17. PLAINTIFF was hired by SUDESH KUMAR ("KUMAR"), a supervising manager employed by HTC and/or HTI.

5

18. Less than one year after being hired, based on his job performance, KUMAR gave PLAINTIFF a raise. PLAINTIFF received a second raise in or about one year later from Paul Krueger, Vice President of Business Sales and Product Marketing.

19. On or about January 2015, KUMAR left his employment with HTC and/or HTI.

20. After KUMAR's departure, HTC and/or HTI assigned NOZZA as PLAINTIFF's supervisor.

21. Soon after and as a result of NOZZA becoming PLAINTIFF's supervisor, the terms and conditions of PLAINTIFF's employment adversely changed and PLAINTIFF began to experience workplace harassment.

22. NOZZA would often have lunch with other employees in a common area next to PLAINTIFF's desk. During lunch, NOZZA would mock PLAINTIFF's accent and make derogatory comments about Muslims.

23. On one occasion, NOZZA commented that he thought then-candidate Donald Trump was right and that the United States should drop a bomb on the Middle East to kill all the Muslim terrorists.

24. PLAINTIFF was able to hear NOZZA's comments.

25. NOZZA had knowledge that PLAINTIFF was able to hear his comments, and had actual or constructive knowledge that his comments would be vexing, insulting, and/or belittling to PLAINTIFF.

26. NOZZA was aware that PLAINTIFF is a Muslim and was born in Iran.

27. NOZZA sometimes referred to PLAINTIFF as "the Mad Iranian" at work in the presence of others and behaved in a way to encourage others to mock PLAINTIFF.

28. The team headed by NOZZA would discuss controversial topics such as politics, religion, and make frequent jokes about minorities.

29. The religious and ethnic harassment was not limited to co-workers, as NOZZA and other members of management would join in the harassment.

30. The comments of NOZZA and general harassment of the workplace made PLAINTIFF uncomfortable and interfered with his ability to perform his work.

31. In an email to NOZZA, one of PLAINTIFF's co-workers, HOLLIS OKAMURA ("OKAMURA") said he was anxious for PLAINTIFF to be out of HTC/HTI.

32. It was well-known in HTC/HTI that the team headed by NOZZA would discuss controversial topics such as politics, religion, and make frequent jokes about minorities.

33. The religious and ethnic harassment was not limited to co-workers. NOZZA and other management would join in the harassment.

34. NOZZA, HTC and/or HTI are responsible for, *inter alia*, establishing procedures for the hiring, promotion, assignment, termination and determining responsibilities for employees.

35. In or about January 2016, NOZZA began to assign PLAINTIFF to projects that involved installing and configuring voice systems.

36. Voice systems work very differently from MPLS networks, each having its own certification and training required to work the respective technology.

37. PLAINTIFF was not hired, certified and/or trained to install or configure voice systems.

38. PLAINTIFF had little or no knowledge regarding the installation or configuration of voice systems, and was not offered any training in this area by his employer HTC/HTI.

39. The assignment of PLAINTIFF to a job position that he was not trained for and had no experience in was intentional, and was intended to put

PLAINTIFF in a position to fail and create a pretext for negative, insulting, and harassing treatment by NOZZA and other members of the team.

40. The assignment of PLAINTIFF to a job position that he was not trained for and had no experience in was committed with willful and intentional discriminatory intent based on PLAINTIFF's race, religion, and/or national origin.

41. The assignment of PLAINTIFF to a job position that he was not trained for and had no experience in materially affected the compensation, terms, conditions, and/or privileges of employment.

42. When PLAINTIFF expressed his discomfort in being given assignments involving technology that he was not trained to work with, NOZZA told PLAINTIFF he would work on these projects or PLAINTIFF would lose his job.

43. NOZZA also frequently raised his voice to PLAINTIFF telling him he is ungrateful for his position.

44. NOZZA did not give PLAINTIFF a performance review in 2016.

45. Without giving PLAINTIFF the benefit of a performance review, NOZZA placed PLAINTIFF on a Performance Improvement Plan, which is similar to probation.

46. NOZZA claimed that PLAINTIFF was put on the Performance Improvement Plan because of PLAINTIFF's inability to work with voice systems, even though PLAINTIFF repeatedly told NOZZA that he was not certified, trained, or experienced in working with voice systems.

47. NOZZA placing the PLAINTIFF on the Performance Improvement Plan was a pretext for discrimination.

48. Thereafter, on or about January 6, 2017, PLAINTIFF was terminated from his position with HTC/HTI.

49. HTC/HTI attempted to justify its termination of PLAINTIFF by citing customer complaints, performance issues, and project delays which were the direct result of NOZZA assigning PLAINTIFF to projects involving technology that NOZZA knew PLAINTIFF had no certification, training, or knowledge.

50. All conditions precedent to the filing of this lawsuit have been performed or have occurred, and all applicable administrative processes have been exhausted.

51. PLAINTIFF's termination was the result of discrimination and done with discriminatory intent by NOZZA and other HTC/HTI managers and employees.

52. The willful, wanton, oppressive misconduct and/or a want of care by the Defendants rises to the level that creates the presumption of a conscious criminal indifference to civil obligations and an award for punitive damages against the Defendants is appropriate in this case.

COUNT I
Section 703 of Title VII of the Civil Rights Act of 1964

53. PLAINTIFF realleges and incorporates by reference, the allegations contained in paragraphs 1 – 52, inclusive.

54. PLAINTIFF was an "employee" as defined by Title VII of the Civil Rights Act of 1964.

55. HTC, HTI, NOZZA, and others acting on behalf of HTC and HTI, discriminated against PLAINTIFF in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), among other ways, when they assigned him to projects involving technology they knew he had no training, education or experience in to justify terminating PLAINTIFF as a pretext for discrimination.

56. Defendants' action of assigning a MPLS certified technician to voice system projects was not a job-related requirement and was inconsistent with business necessity.

57. HTC and/or HTI deprived PLAINTIFF of the same standards of compensation, terms, conditions, or privileges of employment as the result

of an intent to discriminate because of race, religion and national origin in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2(h).

58. The harassment included, but was not limited to mocking PLAINTIFF's accent, calling PLAINTIFF "the Mad Iranian" and other comments meant to demean and intimidate PLAINIFF.

59. HTC/HTI, through NOZZA and other supervisors, employees and agents of HTC and HTI, regularly made derogatory statements about individuals from Iran and the Middle East and Muslims.

60. NOZZA made offensive comments to and about PLAINTIFF including but not limited to saying that the United States should drop an atomic bomb on the Middle East, calling PLAINTIFF the "Mad Iranian" and mocking PLAINTIFF's accent.

61. NOZZA, HTC, and HTI each subjected PLAINTIFF to unlawful harassment based on their racial animosity toward persons of Iranian descent and political hostility and belief that individuals from Iran are terrorists and should be eliminated, thus violating Title VII of the Civil Rights Act of 1964.

62. Defendants intentionally verbally abused PLAINTIFF because of his race, ethnicity, ancestry and national origin.

63. Defendants' verbal abuse of PLAINTIFF was unwelcomed by PLAINTIFF.

64. Defendants' verbal abuse of PLAINTIFF created a work environment that was hostile, intimidating and offensive.

65. On information and belief, employees that were not of Iranian descent were not assigned to and/or forced to work on technologies that they had no education, training, or experience operating.

66. Employees who were not of Iranian descent were not subjected to verbal harassment.

67. Defendants' unlawful discriminatory treatment led to PLAINTIFF's termination, causing PLAINTIFF to suffer both financial and emotional damages.

COUNT II
Racial Discrimination in Violation of
Title VII of the Civil Rights Act of 1964,
42 U.S.C. 2000e et seq.

68. PLAINTIFF realleges and incorporates by reference, the allegations contained in paragraphs 1 - 67, inclusive.

69. Defendants' discrimination against PLAINTIFF is in violation of the rights secured to PLAINTIFF by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991.

70. Defendants' conduct also has had an adverse impact against PLAINTIFF, and is neither job-related nor consistent with business necessity, and therefore violates the rights of PLAINTIFF under Title VII.

71. As a result of Defendants' actions in violation of the Title VII rights of PLAINTIFF, he is entitled to equitable relief, including equitable monetary relief, to remedy and compensate him for the effects of Defendants' unlawful actions.

72. As a result of Defendants' intentional violation of the Title VII rights of the PLAINTIFF, he has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life, thereby entitling him to compensatory damages.

73. In their discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of PLAINTIFF, he is entitled to an award of punitive damages.

74. To remedy the violation of the rights of PLAINTIFF secured by Title VII, PLAINTIFF requests the Court award him the relief prayed for below.

## COUNT III
### 42 U.S.C. § 1981 Discrimination Claim

75. PLAINTIFF realleges and incorporates by reference, the allegations contained in paragraphs 1 - 74, inclusive.

76. PLAINTIFF is a Muslim, racially and ethnically Iranian, and of Iranian ancestry.

77. Defendants intentionally discriminated against PLAINTIFF because of his race, ancestry and ethnicity in the enjoyment, terms and conditions of the employment relationship between PLAINTIFF and Defendants.

78. PLAINTIFF was entitled to equality in the performance, modification, and termination of employment, and to the enjoyment of all benefits, privileges, terms, and condition of the employment relationship.

79. The Defendants discriminatory actions adversely effected PLAINTIFF performance and modification of employment.

80. The Defendants discriminatory actions unfairly and unlawfully caused the termination of PLAINTIFF'S employment.

81. The Defendants discriminatory actions prevented PLAINTIFF'S enjoyment of all benefits, privileges, terms, and condition of the employment relationship.

82. As a direct and proximate result of Defendants' unlawful discrimination, PLAINTIFF suffered, and will continue to suffer, irreparable injury, emotional distress, mental anguish, physiological disorders,

emotional distress, humiliation, monetary damages, and other compensable damages.

## COUNT IX
### State Law Discrimination Claims
### (Race, National Origin, Ethnicity, and Religion)

83. PLAINTIFF realleges and incorporates by reference, the allegations contained in paragraphs 1 – 82, inclusive.

84. Defendants discriminated against PLAINTIFF in the terms, conditions and privileges of employment because of is race, ethnicity, national origin, and religion.

85. Defendants knew that their actions constituted unlawful discrimination and showed willful and/or reckless disregard for PLAINTIFF's statutorily protected rights.

86. Defendants' conduct was willful, deliberate, and egregious.

87. These acts were in violation of Hawaii Revised Statutes §§ 378-2, 378-32; and §§12-46-151, 12-46-171, 12-46-175 of the Hawaii Administrative Rules.

88. As a direct and proximate result of Defendants' unlawful discrimination, PLAINTIFF suffered, and will continue to suffer, irreparable injury, emotional distress, mental anguish, physiological disorders,

emotional distress, humiliation, monetary damages, and other compensable damages.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests this Court grant him relief as follows:

(1) An order enjoining HTC and HTI, its officers, agents, employees, successors and all persons in active concert or participation with it, from engaging in employment practices which discriminate against individuals born in the Middle East on the basis of national origin in violation of Title VII;

(2) Require HTC and HTI, its officers, agents, employees, successors and all persons in active concert or participation with it, to provide make-whole relief to PLAINTIFF as a result of the discriminatory policies and practices alleged in this Complaint, including the following relief:

    a. Back pay and all other appropriate monetary relief in an amount to be determined at trial;

    b. Interest on the amount of lost wages and benefits determined to be due; and

      c. Compensatory damages for the pain, suffering, and medical expenses caused by the discriminatory conduct alleged in this Complaint, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

(3) Require HTC and HTI, its officers, agents, employees, successors and all persons in active concert or participation with it, to take appropriate action to overcome the present effects of Defendants' discriminatory policies and practices including but not limited to the following:

      a. Adopting procedures for addressing and preventing harassment of individuals based on his or her religion, national origin and/or ethnicity;

      b. Regular training to prevent the harassment of individuals based on his or her religion, national origin and/or ethnicity;

      c. A reporting system that allows individuals who have experienced harassment based on his or her religion, national origin and/or ethnicity to a person who is not perpetuating said harassment; and

      d. Disciplinary policies for employees and management who violate said policies.

(4) Special, General and Punitive damages in an amount to be determined at trial;

(5) Attorneys' fees and costs; and

(6) Such other and further relief that the Court deems just and proper.

## JURY DEMAND

PLAINTIFF hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

DATED: Honolulu, Hawaii August 15, 2017.

        /s/ Mia D. Obciana
MIA D. OBCIANA
DAVID SQUERI
Attorneys for Plaintiff
SAEED KHOSRAVI-BABADI