IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SAEED KHOSRAVI-BABADI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civ. No. 17-00405 ACK-KJM |
| | ) |
| HAWAIIAN TELCOM, INC., a Hawaii | ) |
| corporation; JOHN DOES 1-10; JANE | ) |
| DOES 1-10; DOE CORPORATIONS 1-10; | ) |
| DOE PARTNERSHIPS 1-10; DOE | ) |
| GOVERNMENTAL ENTITIES 1-10, | ) |
| | ) |
| Defendants. | ) |

## ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

For the reasons set forth below, the Court DENIES Defendant Hawaiian Telcom, Inc.'s Motion to Compel Arbitration, ECF No. 54.

### BACKGROUND

Only those facts pertinent to the resolution of the instant Motion are set forth herein.

On August 15, 2017, Plaintiff Saeed Khosravi-Babadi ("Plaintiff") filed a Complaint against Hawaiian Telcom, Inc. ("Defendant"), as well as Hawaiian Telcom Communications, Inc., Vito Nozza, and a number of Doe defendants. ECF No. 1. The Complaint asserted claims arising out of Title VII, 42 U.S.C. § 1981, and Hawai`i state law, stemming from the unlawful

discrimination Plaintiff allegedly suffered while he was employed by Defendant. See generally id.

Defendant, Hawaiian Telcom Communications, Inc., and Vito Nozza filed a motion to partially dismiss ("MTPD") on October 16, 2017. ECF No. 10. On January 19, 2018, while the MTPD was pending, the parties stipulated to the dismissal from the action, with prejudice, of Hawaiian Telcom Communications, Inc. and Vito Nozza, as well as of Plaintiff's claim for adverse impact. ECF No. 21. In its January 22, 2018 Order on the MTPD, the Court dismissed Plaintiff's claim for national origin discrimination under 42 U.S.C. § 1981 (insofar as he was asserting one), but otherwise left Plaintiff's § 1981 claim, and his other claims, intact. ECF No. 25 at 16.

Defendant filed its Answer to the Complaint on February 5, 2018, wherein it did not assert the existence of an arbitration agreement between the parties as an affirmative defense. See generally ECF No. 26.

On September 11, 2018, Defendant for the first time produced to Plaintiff an arbitration agreement ("Arbitration Agreement" or "Agreement") signed by Plaintiff on July 30, 2012, wherein Plaintiff agreed, inter alia, that "any legal claim [he] may have arising out of or relating to [his] employment shall be resolved through final and binding arbitration." Second Declaration of Richard M. Rand ("Second Rand Decl."), ECF No.

79-1 ¶ 3; Arbitration Agreement, ECF No. 79-3 at 1001[1]; Second

Rand Decl. ¶ 2; Plaintiff's Deposition Excerpt ("Pl.'s Dep.

Excerpt"), ECF No. 79-2 at 991 (Plaintiff verified that the

arbitration agreement bore his signature).  The Arbitration

Agreement was "Exhibit B" to an offer letter ("Offer Letter"),

ECF No. 79-3 at 993–95, which also included as "Exhibit A" a

"Business Protection Agreement" that provided for, inter alia,

the protection of confidential information, ECF No. 79-3 at 996–

1000.  Plaintiff signed all three documents on July 30, 2012.

See ECF No. 79-3 at 995, 1000, 1001; Pl.'s Dep. Excerpt at 990–

91 (confirming that the documents bear Plaintiff's signature).

In response to Defendant's repeated inquiries as to whether

Plaintiff would stipulate to arbitration, Plaintiff asserted

that Defendant had waived the right to arbitration.  First

Declaration of Richard M. Rand ("First Rand Decl."), ECF No. 54-

4 ¶¶ 1–3.

    On September 20, 2018, Defendant moved for leave to

amend its Answer to include, inter alia, its eighth affirmative

defense: that "Plaintiff's claims are subject to arbitration."

ECF No. 49-7 at 5; see also First Amended Answer, ECF No. 80 at

5.  That motion was granted on November 30, 2018, see ECF No.

---

[1] This citation, and each three- or four-digit citation to a page
in the record, is to the "Page ID #" affixed to the top right-
hand corner of each page by the Court's electronic filing
system.

75, and Defendant filed its First Amended Answer on December 7,
2018, ECF No. 80.

Defendant filed the instant Motion to Compel
Arbitration ("Motion") on September 27, 2018, ECF No. 54,
together with a memorandum in support ("MCA"), ECF No. 54-1.
Plaintiff filed his Opposition to the Motion on November 29,
2018. ECF No. 73. Defendant filed its Reply on December 6,
2018. ECF No. 79. The Court held a hearing on Defendant's
Motion on Thursday, December 20, 2018.

## STANDARD

As provided in the Federal Arbitration Act ("FAA"),
written arbitration agreements "evidencing a transaction
involving commerce . . . shall be valid, irrevocable, and
enforceable, save upon such grounds as exist at law or equity
for the revocation of any contract." 9 U.S.C. § 2. "The FAA
embodies a clear federal policy in favor of arbitration."
Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir.
1999). "[A]ny doubts concerning the scope of arbitrable issues
should be resolved in favor of arbitration, whether the problem
at hand is the construction of the contract language itself or
an allegation of waiver, delay, or a like defense to
arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Constr.
Corp., 460 U.S. 1, 24–25 (1983). "The standard for
demonstrating arbitrability is not high," and arbitration

agreements "are to be rigorously enforced." Simula, Inc., 175
F.3d at 719. "Employment contracts, except for those covering
workers engaged in transportation, are covered by the FAA."
E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002)
(citation omitted).

"Federal substantive law governs the question of
arbitrability." Simula, Inc., 175 F.3d at 719. Under the FAA, a
district court considering a motion to compel arbitration must
consider "(1) whether a valid agreement to arbitrate exists and,
if it does, (2) whether the agreement encompasses the dispute at
issue." Lee v. Intelius Inc., 737 F.3d 1254, 1261 (9th Cir.
2013) (citation and internal quotation marks omitted).

To determine whether the parties have agreed to
arbitration, a district court must apply "ordinary state-law
principles that govern the formation of contracts." Norcia v.
Samsung Telecomms. Am., 845 F.3d 1279, 1283 (9th Cir. 2017)
(quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938,
944 (1995)). Under Hawai`i law,[2] a valid arbitration agreement:
(1) must be in writing; (2) must be unambiguous as to the intent
to submit disputes or controversies to arbitration; and (3)
requires bilateral consideration. Gabriel v. Island Pac. Acad.,

---

[2] Here, there is no dispute that Hawai`i law governs the issue of
contract formation. See MCA at 10–11 (invoking Hawai`i law
regarding the elements of a valid arbitration agreement); Opp.
at 10–11 (same).

Inc., 140 Haw. 325, 334, 400 P.3d 526, 535 (2017) (citing Douglass v. Pflueger Haw., Inc., 110 Haw. 520, 531, 135 P.3d 129, 140 (2006)).  "The party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists between the parties." Siopes v. Kaiser Found. Health Plan, Inc., 130 Haw. 437, 446, 312 P.3d 869, 878 (2013) (citation omitted).  "If this initial burden is met, the burden then shifts to the opposing party to present evidence on its defenses to the arbitration agreement."  Id. (citation and internal quotation marks omitted); see also S. Glazer's Wine and Spirits, LLC v. Denyer, Civ. No. 17-00407 JMS-RLP, 2017 WL 6417810, at *3 (D. Haw. Dec. 15, 2017).

"For purposes of deciding a motion to compel arbitration, the Court may properly consider documents outside the pleadings." Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc., No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at *5 (E.D. Cal. Dec. 26, 2013) (collecting cases), aff'd sub nom. Clean Tech Partners, LLC v. Elec. Recyclers Int'l, Inc., 627 F. App'x 621 (9th Cir. 2015).

## DISCUSSION

### I.   Whether a Valid Arbitration Agreement Exists

Defendant, as the party seeking to compel arbitration, bears the burden of establishing the existence of a valid arbitration agreement.  See Siopes, 130 Haw. at 446, 312 P.3d at

6

878; see also Gabriel, 140 Haw. at 334, 400 P.3d at 535 ("In order to be valid and enforceable, an arbitration agreement must have the following three elements: (1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to arbitration; and (3) there must be bilateral consideration." (citation and internal quotation marks omitted)).  Here, Defendant has not carried its burden.

### a. The Arbitration Agreement Is in Writing

As Defendant points out, "[t]he fact that there is a written agreement to arbitrate cannot reasonably be disputed." MCA at 11; see also Arbitration Agreement, ECF No. 54-3 at 282. And Plaintiff does not dispute this point.  See generally Opp. This element is thus established.

### b. The Arbitration Agreement Is Ambiguous as to the Intent to Submit Disputes or Controversies to Arbitration, and There Was No Bilateral Consideration

The Arbitration Agreement, which Plaintiff signed on July 30, 2012,[3] provides, in relevant part: "In consideration for

---

[3] Plaintiff gestures at an argument that he did not in fact sign the Arbitration Agreement, see Opp at 3 (noting that Defendant "informed Plaintiff it possessed an arbitration agreement, purportedly signed on July 30, 2012"), but does not in fact make any such argument, see generally Opp.  Moreover, Plaintiff identified the signature on the Arbitration Agreement as his own.  Pl.'s Dep. Excerpt at 991.

my employment with Hawaiian Telcom, Inc. or its subsidiary or affiliate, I agree that any legal claim that I may have arising out of or relating to my employment shall be resolved through final and binding arbitration." Arbitration Agreement at 1001. Defendant argues that the Arbitration Agreement unambiguously shows "the parties' intent to arbitrate all disputes arising out of Plaintiff's employment" with Defendant. MCA at 12; see also Reply at 11–15. Defendant also contends that the Agreement is supported by bilateral consideration, both because Plaintiff received the benefit of employment with Defendant, MCA at 13, and because Defendant was bound to the arbitration process as a party to the Agreement, Reply at 8–11. Plaintiff, on the other hand, alleges that the Arbitration Agreement "is unenforceable for lack of bilateral consideration," Opp. at 10, because the Business Protection Agreement provided that any claim that arose thereunder would be filed in "a court of competent jurisdiction in Honolulu, Hawaii," Business Protection Agreement at 999, which is evidence of a lack of mutuality of obligation, Opp. at 13. In so arguing, Plaintiff also asserts that, when the Offer Letter, the Business Protection Agreement, and the Arbitration Agreement are read together, the result is a "document with inconsistent and ambiguous terms that render [the Arbitration Agreement] unenforceable." Opp. at 11; see also id. at 12–13.

### i. There is Ambiguity as to the Intent to Submit Disputes or Controversies to Arbitration

"A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one meaning." Airgo, Inc. v. Horizon Cargo Transport, Inc., 66 Haw. 590, 594, 670 P.2d 1277, 1280 (1983) (citations omitted); see also United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp., 84 Haw. 86, 92, 929 P.2d 99, 105 (Ct. App. 1996) ("A word or phrase within a contract is ambiguous if, examining the word or phrase in the context of the entire contract, the word or phrase is reasonably susceptible to more than one meaning."). Contractual ambiguities are to be resolved against the drafter. Luke v. Gentry Realty, Ltd., 105 Haw. 241, 249, 96 P.3d 261, 269 (2004) (citations omitted).

Plaintiff contends that the Offer Letter, the Business Protection Agreement, and the Arbitration Agreement should be read together, and that doing so reveals ambiguity. See Opp. at 11. The Court concurs. When documents concern the same subject matter and were executed at the same time between the same parties, courts read them together. Hayashi v. Chong, 2 Haw. App. 411, 411, 634 P.2d 105, 105 (1981); see also Restatement (Second) of Contracts § 202(2) (1981) ("A writing is interpreted as a whole, and all writings that are part of the same

9

transaction are interpreted together."); Narayan v. Ritz-Carlton
Dev. Co., 140 Haw. 343, 400 P.3d 544 (2017) (examining all
"controlling documents" that governed the parties' relationship
and finding ambiguity because one document provided for
arbitration of disputes and another for the resolution of
disputes in state court).  Here, reading the documents together
reveals ambiguity.

The Business Protection Agreement provides for the
protection of any confidential information acquired by Plaintiff
during his employment, further pledges Plaintiff's "Non-
competition, Solicitation, or Inducement of Customers or
Employees," and certifies that Plaintiff will not, by virtue of
his employ with Defendant, be in violation of any similar
agreements between himself and any former employers.  Business
Protection Agreement at 996–98.  It also contains a forum-
selection clause: "I agree that any claim in connection with
this Agreement may only be filed in a court of competent
jurisdiction in Honolulu, Hawaii." Id. at 999.  Defendant argues
that there is no inconsistency between or ambiguity regarding
the Business Protection Agreement and the Arbitration Agreement,
as the forum-selection clause contained in the former plainly
applies only "to enforcement of the confidential[it]y clauses
and restrictive covenants stated therein." Reply at 14.

The Court disagrees. By the Business Protection Agreement's terms, any claim that Plaintiff may have in connection with that agreement—for example, an action seeking a declaration that the non-competition provisions are overbroad, or a suit to recover commissions withheld if Defendant believed Plaintiff had breached that agreement, Business Protection Agreement at 997-99—could "only be filed in a court of competent jurisdiction in Honolulu, Hawaii," id. at 999. And yet the Arbitration Agreement would require such claims—which would certainly "arise out of or relate to [Plaintiff's] employment"— to be submitted to arbitration. Arbitration Agreement at 1001. In other words, and reading the Business Protection Agreement together with the Arbitration Agreement, the latter evidences an ambiguity in the intent to submit disputes or controversies to arbitration, as it is unclear to which claims it applies.[4]

Moreover, the Arbitration Agreement standing alone is ambiguous in that it does not on its face, either by its terms or by way of subscription by any agent of Defendant, appear to bind Defendant. Plaintiff agreed to resolve his employment-

---

[4] The Court notes that the Business Protection Agreement contains a provision that states, "I acknowledge that this agreement does not supersede any other agreement(s) between me and the Company." Business Protection Agreement at 1000. In the Court's view, this does not resolve the evident ambiguity in the Arbitration Agreement; that one agreement does not supersede the other is no answer to the opacity that results when the two agreements are read together.

related disputes "through final and binding arbitration," but, perhaps aside from the word "binding," the Arbitration Agreement contains no evidence that Defendant intends to be bound—that it intends to submit disputes or controversies to arbitration. Indeed, it appears to the Court that the Arbitration Agreement itself is relatively unambiguous on this point, and that any implication of Defendant's positive intent to submit disputes to arbitration arises only when the Arbitration Agreement is read together with the Offer Letter, which is subscribed by Defendant's agent.  Offer Letter at 995.

For these reasons, the Court finds the Arbitration Agreement to be ambiguous as to the intent to submit disputes or controversies to arbitration.  Gabriel, 140 Haw. at 334, 400 P.3d at 535.

### ii.  There is No Bilateral Consideration

"'Consideration is defined as a bargained for exchange where the promisor receives some benefit or the promisee suffers a detriment.'" Douglass, 110 Haw. at 534, 135 P.3d at 143 (quoting Shanghai Inv. Co. v. Alteka Co., 92 Haw. 482, 496, 993 P.2d 516, 530 (2000), overruled on other grounds by Blair v. Ing, 96 Haw. 327, 31 P.3d 184 (2001)).  A contract that binds only one party lacks bilateral consideration and is unenforceable.  See Douglass, 110 Haw. at 535, 135 P.3d at 144 (quoting Trumbull v. Century Marketing Corp., 12 F. Supp. 2d

12

683, 686 (N.D. Ohio 1998) ("Without mutuality of obligation, a contract cannot be enforced.")).

Hawai`i courts have found that arbitration provisions contained within larger agreements do not require consideration separate and apart from that supporting the agreements in which they appear.  See, e.g., Durett v. ACT, Inc., 130 Haw. 346, 310 P.3d 1047 (unpublished table decision); Vickery v. Hastert, 120 Haw. 115, 201 P.3d 628 (Ct. App. 2009) (unpublished table decision).  But here, it appears to the Court—and, in fact, Defendant argues—that the Arbitration Agreement is separate from both the Offer Letter and the Business Protection Agreement rather than a provision within either.

> In fact, the Arbitration Agreement is a
> separate one[-]page document identified as
> EXHIBIT B and it is introduced by its own
> bolded and capitalized heading ARBITRATION
> AGREEMENT.  Directly below and on the same
> page as the Arbitration Agreement is
> Plaintiff's signature and printed name
> acknowledging that he "[u]nderstood,
> accepted and agreed" to its terms.

Reply at 13.  These characteristics of the Arbitration Agreement indicate that it "stands alone, separate and distinct from" both the Offer Letter and the Business Protection Agreement, constituting an independent contract.  See Douglass, 110 Haw. at 535, 135 P.3d at 144 (quoting Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 835 (8th Cir. 1997)).  The Arbitration Agreement is not merely a numbered paragraph within a larger

13

document, see, e.g., Vickery, 120 Haw. 115, 201 P.3d 628;

rather, it is evidently a separate agreement that purports to be

supported by its own consideration. See Brown v. KFC Nat'l

Mgmt. Co., 82 Haw. 226, 246, 921 P.2d 146, 166 (1996)

(underscoring "the general proposition that an arbitration

agreement is severable from the writing in which it is

embedded"). The Court's analysis of whether there was indeed

bilateral consideration is therefore properly confined to the

Arbitration Agreement itself.

Defendant argues for the existence of bilateral

consideration to support the Arbitration Agreement along two

separate lines. First, Defendant asserts that Plaintiff's

receipt of employment itself, and its attendant benefits, was

sufficient consideration to support the Arbitration Agreement.

MCA at 13. Second, Defendant argues that it, as well as

Plaintiff, was bound to arbitrate any claims Plaintiff might

have arising out of or relating to his employment, and therefore

there was bilateral consideration.[5] See Reply at 8-11.

---

[5] In arguing for the validity of the Arbitration Agreement,
Defendant repeatedly misstates its scope. Compare Arbitration
Agreement at 1001 ("I agree that any legal claim that I may have
arising out of or relating to my employment shall be resolved
through final and binding arbitration" (emphasis added)) with
Reply at 10 ("[B]oth parties here have agreed to be bound by the
arbitration process by virtue of the fact that 'claims arising
out of or relating to' Plaintiff's employment with Hawaiian
Telcom will be 'resolved through final and binding
arbitration.'") and MCA at 12 ("[T]he Arbitration Agreement in

14

The Hawai`i Supreme Court has not explicitly spoken as to whether at-will employment such as Plaintiff's may constitute consideration sufficient to support an arbitration agreement, but has implicitly held in Douglass that it does not. There, the Hawai`i Supreme Court found bilateral consideration to be lacking, despite the plaintiff-employee's receipt of at-will employment. Douglass, 110 Haw. at 523, 534–35, 135 P.3d at 132, 143-44. Further, Defendant cites to no Hawai`i appellate cases (and nor can the Court locate any) in which at-will employment has been held to suffice to make up an employer's part of the required bilateral consideration.[6] In light of Douglass's implicit holding, therefore, the Court finds that Defendant's at-will employment of Plaintiff was insufficient to constitute "consideration" on Defendant's part.

---

the instant case provides for 'final and binding arbitration' of 'any legal claim . . . arising out of or relating to . . . employment.'") and id. ("Thus, the Arbitration Agreement sets forth clear, definite terms showing the parties' intent to arbitrate all disputes arising out of Plaintiff's employment with Hawaiian Telcom." (emphasis added)) and id. at 11 ("The Arbitration Agreement unambiguously shows the intent of the parties to submit to arbitration all legal claims arising out of or relating to Plaintiff's employment." (emphasis added)).

[6] The Court further notes that, in those cases that arose in the employment context and in which the Supreme Court of Hawai`i has found there to be bilateral consideration, it has never cited employment itself as supporting such a finding. See, e.g., Brown v. KFC Nat'l Mgmt Co., 82 Haw. 226, 239–40, 921 P.2d 146, 159-60 (1996); Gabriel, 140 Haw. at 335, 400 P.3d at 536.

Defendant's second argument is in fact two interdependent arguments: (1) that Defendant was bound by the Arbitration Agreement, and (2) that the manner in which it purportedly bound itself—to arbitrate any claims Plaintiff might have that arose out of or related to his employment—was sufficient to constitute bilateral consideration. In support of this argument, Defendant cites O'Neil v. Hilton Head Hospital, 115 F.3d 272 (4th Cir. 1997). The Court does not dispute that this out-of-circuit authority supports Defendant's position to a certain extent. Regarding an arbitration agreement that mirrored the instant one in most important respects, the Fourth Circuit found that "the agreement to be bound by arbitration was a mutual one. The contract to arbitrate was proffered by the employer. Such a proffer clearly implies that both the employer and the employee would be bound by the arbitration process." Id. at 274. But the Fourth Circuit's decision was supported by facts not present here. In response to the plaintiff's contention that the employer "has nowhere agreed to be bound by arbitration," the Fourth Circuit noted that the employer "agreed" via "multiple references in [its] employee handbook . . . that the arbitration process was binding. For example, the handbook states: 'As regards the Fair Treatment Procedure, [employer] is committed to accepting the obligation to support and assure access to the *binding arbitration procedure* for

solving disputes if necessary.'" Id. (emphasis in opinion).

Here, although the Arbitration Agreement includes the words

"final and binding arbitration," Arbitration Agreement at 1001,

there is no clear indication, either on the face of the

Agreement or in the other documents in the record, that

Defendant intended itself to be bound.

But even if O'Neil were directly on point, it would

not resolve the issue, as this Court is bound to apply Hawai`i

law to determine whether a valid agreement to arbitrate exists.

Defendant has cited to no Hawai`i authority that supports its

contention that it is bound by the Arbitration Agreement,

despite the fact that the Agreement makes no reference to

Defendant's obligations and contains no evidence of its

agreement.  Nor has Defendant explained why, in this instance,

the Court ought to disregard Hawai`i's longstanding rules that,

"[a]bsent ambiguity, contract terms must be interpreted

according to their plain meaning," Hawaiian Ass'n of Seventh-Day

Adventists v. Wong, 130 Haw. 36, 49, 305 P.3d 452, 465 (2013)

(citation omitted), and that, "in interpreting contracts,

ambiguous terms are construed against the party who drafted the

contract," Luke, 105 Haw. at 249, 96 P.3d at 269 (citations

omitted).

Here, the plain meaning of the Arbitration Agreement

is that Plaintiff—but not Defendant—agreed that Plaintiff would

submit all of his claims "arising out of or related to [his] employment" to "final and binding arbitration." Arbitration Agreement at 1001. The only potential source of ambiguity is the phrase "final and binding arbitration," which Defendant contends means that it would be bound by the arbitration process, and thus is bound by the Arbitration Agreement. See Reply at 10–11. Insofar as there is an ambiguity here, the Court believes it applies only to the scope of Plaintiff's agreement—in other words, whether Plaintiff was agreeing that the arbitration of his claims would be binding on him alone or on Defendant as well. But even if this phrase could reasonably be interpreted in the way Defendant contends it ought to be—as an indication that Defendant, too, was bound to arbitrate Plaintiff's employment-related claims—it remains at the very least ambiguous, and the ambiguity must be construed against Defendant, the drafter of the Arbitration Agreement. Luke, 105 Haw. at 249, 96 P.3d at 269. So construing the ambiguity, and reading the Arbitration Agreement's other terms "according to their plain meaning," Hawaiian Ass'n of Seventh-Day Adventists, 130 Haw. at 49, 305 P.3d at 465, the Court finds that Defendant was not bound by the Agreement. This being the case, there was no "mutuality of obligation," and the Arbitration Agreement is unenforceable. See Douglass, 110 Haw. at 535, 135 P.3d at 144.

This result is supported not only by general principles of Hawai`i contract law, but also by on-point Hawai`i authority. The only Hawai`i appellate court to have decided the issue found a lack of bilateral consideration under circumstances very similar to those here present. In Santander v. Caris Med Surg, LLC, 140 Haw. 416, 400 P.3d 617 (Ct. App. 2017) (unpublished table decision), the Intermediate Court of Appeals ("ICA") considered an arbitration agreement that required "all . . . employees to agree to submit to binding arbitration any controversies concerning compensation, employment, or termination of employment[.]" Id. The ICA "note[d] the lack of mutual consideration in the Arbitration Policy, which requires [the employer's] employees to submit to binding arbitration, but does not impose that requirement on [the employer]."[7] Id. Moreover, the Court notes the Hawai`i Supreme Court's verbiage in Douglass, which sheds some light on this issue. "The arbitration provision expressly provides that both 'parties agree not to institute any action in any court . . . against the other[.]' On its face, the provision is supported

_____

[7] The ICA so held even in the face of language in the at-issue arbitration agreement that stated that "if any dispute should ever arise between myself and [employer] . . . such dispute(s) shall be submitted to binding, mandatory, and exclusive arbitration." Santander, 140 Haw. 416, 400 P.3d 617. The ICA considered such language, the like of which appears nowhere in the instant Arbitration Agreement, to be insufficient to support a finding of bilateral consideration.

19

by bilateral consideration, that is, that *both* Douglass and Pfleuger would forego their respective rights to a judicial forum and accept the binding arbitration process." <u>Douglass</u>, 110 Haw. at 534–35, 135 P.3d at 143–44 (emphasis and alterations in original).  Here, and unlike in <u>Douglass</u>, the face of the Arbitration Agreement reveals no mutual assent to arbitration, and neither does the Agreement reveal such assent when parsed. Finally, the Court observes that Defendant has cited no authoritative cases whatsoever to support either its contention that it was bound or its corollary contention that the extent to which it bound itself constituted consideration sufficient to support the Arbitration Agreement.

In sum, the Arbitration Agreement is ambiguous as to the parties' intent to submit disputes to arbitration and lacks the essential component of bilateral consideration.  Defendant has failed to carry its burden to establish that there was a valid agreement to arbitrate, and its Motion to Compel Arbitration is therefore denied.[8]

---

[8] Having found there to be no valid agreement to arbitrate, the Court finds it unnecessary to reach the issue of waiver.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Compel Arbitration, ECF No. 54.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, December 21, 2018.

Alan C. Kay
Sr. United States District Judge

Khosravi-Babadi v. Hawaiian Telcom, Inc. et al., Civ. No. 17-00405 ACK-KJM, Order Denying Defendant's Motion to Compel Arbitration.